79 F.2d 88 (1935)
In re WORRALL.
SELIGSON
v.
WHITNEY et al.
No. 457.
Circuit Court of Appeals, Second Circuit.
July 22, 1935.
William Zuckerman, of New York City (William Zuckerman and Bernard Bayer, both of New York City, of counsel), for appellant Charles Seligson.
Carter, Ledyard & Milburn, of New York City (Leslie D. Dawson and Wayne G. Jackson, both of New York City, of counsel), for appellee Richard Whitney.
Prince & Loeb, of New York City (Sidney J. Loeb and Leon M. Prince, both of New York City, of counsel), for appellee Henrietta I. Rubin.
Henry K. Heyman, of New York City, in pro per.
Chadbourne, Hunt, Jaeckel & Brown, of New York City (William M. Chadbourne and Gerald B. O'Neill, both of New York City, of counsel), for appellee Miles H. Vernon.
Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
On October 30, 1934, Richard P. Worrall filed a voluntary petition in bankruptcy *89 and on November 24, 1934, the appellant, Seligson, became trustee. On January 19, 1934, Worrall entered into an agreement of limited partnership with Joseph J. Wood and Henrietta I. Rubin for the conduct of a brokerage business on the New York Stock Exchange in which Worrall and Wood were to be the general partners and Rubin the special partner. Worrall contributed to the capital of the firm his seat on the Stock Exchange, valued at $90,000, and Rubin $50,000 in cash. Wood contributed no capital, and his only interest was one-half of 1 per cent. of the profits of the business, and he was not, as between the general partners, to bear any of the losses. The $50,000 contributed by Rubin was to be used to pay off at once a creditor of Worrall.
From the earnings of the partnership Rubin was to receive 6 per cent. per annum on the $50,000 she had contributed, Worrall was to receive $1,800 per month, and any balance of net earnings was to be turned over to Rubin to pay state and federal income taxes, and after that to be held by her until the termination of the partnership. At that time, after general creditors of the partnership were satisfied, Rubin was to be paid back her capital contribution of $50,000 and also one-half of any profit derived from a sale of the Stock Exchange seat at more than $90,000. Worrall gave her an irrevocable power of attorney authorizing her to sell the seat when the partnership ended and to pay herseif from the proceeds.
The copartnership articles read that: "Any and all moneys obtained from the sale of the aforesaid Seat * * * upon the dissolution of this partnership, and any and all other property, if any, of the partnership, shall * * * be turned over to the third party (Rubin) to be held by her in escrow, and said moneys shall be placed in a bank in a special account, which moneys shall be held for the benefit of any general creditors of the partnership, and after the general creditors of the partnership are satisfied the remainder of said moneys, if any, shall then be used to satisfy any obligations that there may be to the third party, and after the obligations to the third party are satisfied, the remainder of said moneys, if any, shall then be used to pay off the obligation to Miles H. Vernon referred to in the partnership agreement, and the balance * * * shall then be turned over to the first party (Worrall) or his personal representatives, or to such other person or persons as may be legally entitled thereto."
Vernon, who is one of the appellees, was a creditor of Worrall previous to the formation of the copartnership. The latter was indebted to him on two promissory notes aggregating $40,000.
Rubin had the option of terminating the partnership if the sales price of a seat on the New York Stock Exchange fell below $90,000. Because that happened, she exercised her option on September 8, 1934, and directed the sale of the seat, which was effected two days later at the price of $83,000. The Exchange had charges against it of $260.01, and after their deduction held the balance of $82,739.99 for payment to the persons who might be entitled to it.
The partnership agreement provided that upon its termination Mrs. Rubin should be the liquidator, and she accordingly claimed the proceeds of the seat from the Exchange. Before it had paid the money, however, Worrall started a suit in the Supreme Court of New York against Wood and Rubin for the dissolution of the partnership and for the appointment of a receiver and, though he had obtained no service upon Mrs. Rubin, got a judge to enjoin her from collecting the proceeds of the seat. Worrall's former wife, in order to enforce payment of alimony under a decree of divorce, instituted proceedings for the sequestration of his property, had the appellee Heyman appointed receiver in those proceedings, and restrained Worrall and any persons in possession of his property from disposing of the same. A third suit for money had and received was brought by Mrs. Rubin against the Stock Exchange to recover the proceeds of the seat; whereupon Worrall filed his petition in bankruptcy, and his trustee made demand upon the Exchange for the proceeds of the seat and applied to the bankruptcy court for an order restraining the plaintiffs in each of the three actions from proceeding therewith and directing the Exchange to turn over the proceeds of the seat to the trustee. The Exchange declined to pay the proceeds either to the trustee or to Rubin as liquidator of the partnership. Judge Goddard denied the motion of the trustee and ordered the latter to appear in the action brought by Mrs. Rubin against the Stock Exchange and directed the Stock Exchange to substitute the trustee for the Exchange in that action. He decided that *90 the proceeds were not in the actual or constructive possession of the bankrupt or the latter's trustee. He further determined that adverse claims to such proceeds were involved and might not be summarily adjudicated in the bankruptcy court, but must be determined in a plenary suit. The trustee has appealed and assigned error on the ground that the bankruptcy court was in constructive possession of the proceeds of the seat and might summarily determine the rights of all parties to the same.
The bankruptcy court can only exercise summary jurisdiction over the cause of action which the trustee of Worrall is asserting against the Stock Exchange if it has actual or constructive possession of that cause of action which is the res with which we are dealing. We have several times adverted to the fact that "possession" is a term hardly descriptive of control over a chose in action; yet, though borrowed from the field of tangible property, it has been constantly applied to intangibles. In re Hudson River Nav. Corporation, 57 F.(2d) 175 (C. C. A. 2), In re Borok, 50 F.(2d) 75 (C. C. A. 2), and In re Roman, 23 F. (2d) 556 (C. C. A. 2). See, also, In re Kelley (D. C.) 297 F. 676, and In re I. Greenbaum & Sons Co. (D. C.) 6 F. Supp. 245. The decisions are numerous that, if the bankrupt remained the legal owner of the chose in action up to the time of the filing of the petition, though it had become subjected to equitable liens or interests or attachments, his control was such that a trustee in bankruptcy who succeeded him was to be regarded as in "possession" of the chose in action and as in a position summarily to determine his rights as against other claimants. Board of Trade of City of Chicago v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; In re Zimmerman, 66 F.(2d) 397 (C. C. A. 2); Street v. Pacific Indemnity Co., 61 F.(2d) 106, 108 (C. C. A. 9); In re Borok (C. C. A.) 50 F.(2d) 75; Seattle Curb Exchange v. Knight, 46 F.(2d) 34 (C. C. A. 9); In re Hoey (C. C. A.) 290 F. 116; Orinoco Iron Co. v. Metzel (C. C. A.) 230 F. 40; In re Ransford, 194 F. 658 (C. C. A. 6); O'Dell v. Boyden, 150 F. 731 (C. C. A. 6).
But an outright assignment of a claim for wages made prior to bankruptcy, with notification to the debtor of the assignee's rights, has been held to give the assignee "possession" and to make him an adverse claimant whose rights could not be determined summarily in the bankruptcy court. Copeland v. Martin, 182 F. 805 (C. C. A. 5). See, also, In re Paramount Fireproof Door Co., 43 F.(2d) 558 (D. C. E. D. N. Y.). Judge Swan distinguished these last two decisions where the bankrupt had lost title to his chose in action from those where he still retained it, however much he had encumbered it. In re Borok (C. C. A.) 50 F.(2d) 75, 77. When dealing with accounts assigned by the obligee before his bankruptcy, Judge Patterson discussed this whole subject in an instructive opinion, and said: "Where * * * the assignee has notified the debtors of the assignment and has taken complete charge of collections prior to the assignor's bankruptcy, possession may be said to have passed to the assignee and summary proceedings will not lie." In re I. Greenbaum & Sons Co. (D. C.) 6 F. Supp. 245, 247.
The trustee insists that, whatever may be said of assigned accounts, a seat on the Stock Exchange is different, and has cited Board of Trade of City of Chicago v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533, Seattle Curb Exchange v. Knight, 46 F.(2d) 34 (C. C. A. 9), O'Dell v. Boyden, 150 F. 731 (C. C. A. 6), and particularly our decision of In re Hoey, 290 F. 116, in support of his contention. In the first three decisions, prior to the commencement of bankruptcy proceedings, there were attempted assignments of seats on Exchanges contrary to the rules of the associations. It was held that such assignments were ineffectual to transfer actual or constructive possession of the claimants. In the Hoey Case the seat had been sold prior to bankruptcy, and a claim to the proceeds was asserted by one having an equitable interest in the seat. We held that the bankruptcy court had jurisdiction and could proceed summarily to determine the claimant's rights. But whatever may have been the situation in respect to the proceeds of the seat, or, more properly speaking, in respect to the cause of action against the Stock Exchange after the seat was sold, under the facts in Re Hoey (C. C. A.) 290 F. 116, on the present record the decision will have to be different. Article 14, section 3, of the constitution of the New York Stock Exchange provides that, upon the transfer of a membership, the proceeds shall be applied, after the payment of certain preferred claims and debts to the Exchange and its affiliates and to members as follows:
"Fourth. The surplus, if any, of the proceeds of the transfer of a membership *91 shall be paid to the person whose membership is transferred, or to his legal representatives, upon the execution by him or them of a release or releases satisfactory to the Committee on Admissions, unless the Committee on Admissions shall determine * * * (b) that said member has expressly agreed that said surplus shall be paid to such partnership, in either of which events said surplus shall be paid over to such firm upon the execution by said member or such firm of a release or releases satisfactory to the Committee on Admissions."
Worrall had agreed in the articles of copartnership that the seat was his contribution toward capital of the firm and that so far as necessary for the protection of creditors the "proceeds of said membership" were to be "an asset of said partnership."
After the seat was sold and the claims of the Exchange were satisfied from the proceeds under the constitution of the Exchange, the surplus was to be paid over to the partnership according to the terms of the agreement.
We think that Worrall parted with possession and control over the proceeds of the seat prior to bankruptcy, and that there was a complete vesting of title and possession in Mrs. Rubin as liquidator of the business. Mrs. Rubin, on behalf of the partnership, was asserting a claim adverse to that of the appellant, who is trustee for Worrall, and not for the firm, which was never adjudicated a bankrupt. Accordingly, the bankruptcy court was without jurisdiction to adjudicate the rights of the parties in a summary manner, and the trustee must have resort to relief in a plenary action.
Order affirmed.