506

## SCHWARTZ v. HOROWITZ.
### No. 19.

Circuit Court of Appeals, Second Circuit.
Nov. 25, 1942.

George Moskowitz, of New York City, for appellant.

Benjamin Brownstein, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy which affirmed the order of a referee bringing in one, Horowitz, as a party to a suit in contract brought by the trustee in the bankruptcy court against two corporations. Horowitz was a partial assignee from the bankrupt of the claims sued upon by the trustee, holding his assignment as security. The referee brought him into the bankruptcy suit, together with a number of other partial assignees, and enjoined him from continuing an action in the state court which he had commenced before petition filed against the two corporations who are the obligors in the bankruptcy suit. Horowitz did not join the bankrupt in his action, he has not joined the trustee, and the trustee has not intervened. He appeared specially in the bankruptcy suit, and protested that he was an adverse claimant and beyond the jurisdiction of the court, either to make him a party or to enjoin his action, on the ground that he alone was in "possession" of the chose of action. On the other hand, the obligors and all but two of the partial assignees other than Horowitz consented to the jurisdiction of the bankruptcy court as the forum in which all controversies may be decided. The questions involved are (1) whether that court had "summary" jurisdiction to bring in Horowitz as a party, and (2) whether it could enjoin his action in the state court.

The rights of action against the obligors arose from the following facts. The Peerless Casualty Company was engaged in the underwriting of bail bonds and on July 1, 1937 it made a contract with the Plymouth Agency by which it agreed to share its fees with the Agency in return for services rendered by the Agency. (That contract nowhere appears in the record.) On December 28, 1937 the Agency made a contract with the bankrupt to pay it for the bankrupt's "services thirty per cent (30%) of its net profits from July 1st, 1937;" and the bankrupt agreed not to underwrite any bail bonds except for the Agency and to do various other things therein specified. This contract recited that the Agency was "general manager of the bailbond department" of the Peerless Company. On June 28, 1938 the bankrupt made a contract with the Peerless Company by which it agreed to indemnify that company for any losses suffered upon bonds underwritten by its agents, and in which it further authorized the Agency (which was not a party) "to retain as additional security for this Indemnity Agreement 40% Forty percent of monies which are now due or may become payable" under the contract of December 28, 1937. On February 28, 1939 a similar contract was entered into between the Peerless Company, the Agency and the bankrupt. Both these contracts authorized the Peerless Company to retain any commission due as security for performance of the bankrupt's agreement to indemnify it for any losses. For the period between December 1, 1938 and December 31, 1939, the net profits of the Agency were $30,785.07, thirty per cent of which was $9,235.52, and forty per cent of the thirty per cent of which was $3,694.21. The Agency claims the privilege of withholding this last sum as security against any liabilities on bail bonds underwritten through the bankrupt's agents. The amount credited to the bankrupt upon the books of the Agency was not segregated in any way; it was not a trust fund, and the bankrupt's right of action could only be in personam. The Peerless Company, on the other hand, put into a separate account all the commissions earned by its agents; that fund is to be regarded as a trust fund in which the agents had each his own aliquot share. The Peerless Company acknowl-

508

edges that there is more than $8,300 in this account to which the bankrupt is entitled but which it claims the privilege of withholding as security against any liabilities on the bail bonds, as the Agency claims to hold the sum mentioned above. Such is the only conclusion which can be reached from the very confused and unsatisfactory testimony, and such are the findings. Both Horowitz and the trustee claim against the companies much larger amounts than the companies concede to be due; but neither claim any proprietary interest in any fund held in trust or otherwise..

The partial assignee of a chose in action can never collect of the obligor more than his share unless the assignor intends to transfer the entire chose of action and to rely upon the assignee to account to him for all but the part assigned. In no case can the obligor be called upon to pay twice, or to divide payment into two parts, or to suffer two suits; each of these would vary the agreed performance. Williston on Contracts §§ 443, 444. If the obligor objects that the assignor is a necessary party, it was formerly necessary to get him before the court unless the assignment is construed as we have just suggested. Originally the assignee had to do this by bill in equity joining the assignor, but under modern procedure he need not make the assignor a party, but may leave it to the obligor to raise the objection, though he must then join the assignor on peril of suffering dismissal. That is the present rule in New York. Dickinson v. Tyson, 125 App.Div. 735, 110 N.Y.S. 269; Carvill v. Mirror Films, Inc., 178 App.Div. 644, 165 N.Y.S. 676, affirmed 226 N.Y. 683, 123 N.E. 858. If the obligor fails to raise the objection he abandons it. N.Y. Civil Practice Act, § 278 (1) (e).

For these reasons we think that Horowitz had "control" over the choses of action. He had advised the obligors before petition filed by bringing suit, and he could collect unless they objected that the bankrupt and the other partial assignees were necessary parties defendant, which apparently they have not done. If they had, he could have made the bankrupt and the other partial assignees parties and gone ahead. On the other hand, the bankrupt, and the trustee as its sucessor, also had precisely the same "control" of the choses in action and for the same reasons; either one could sue the obligors without Horowitz and the other partial assignees; and if the obligors objected, could mend his hold. It is true that the bankrupt's partial assignments had more than exhausted the sums which the Peerless Company and the Agency admit to be due, but the trustee claims a substantial surplus over all assignments, which gives him a standing. Thus both the action at law and the bankruptcy suit well lay.

This is not inconsistent with anything we have said in earlier cases. It is true that when an assignee of even the whole chose in action has agreed not to give notice to the obligors and to allow the assignor to collect, the trustee may proceed summarily in bankruptcy as a "possessor" of the chose in action. In re Borok, 2 Cir., 50 F.2d 75; In re Prince, 2 Cir., 89 F.2d 681. But an out and out assignment under which the assignee is permitted to give notice and to collect, puts the chose in action into the assignee's "control," certainly after notice to the obligor (Copeland v. Martin, 5 Cir., 182 F. 805), and at times even before notice. In re I. Greenbaum & Sons Co., Inc., D.C., 6 F.Supp. 245, Patterson, J. The only sense in which the concept of "possession" can be applied and which must govern the jurisdiction of the bankruptcy court, is the completeness of the "control," and the assignor and the partial assignee each has complete "control," as we have just shown. Therefore, since the obligors in the case at bar have consented, the partial assignees had no valid objection to being brought into the bankruptcy suit. Had there been property for the state court to seize, that court would have had exclusive jurisdiction, for the state action came first. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215. But as this was not the case—Horowitz's action being altogether in personam —the bankruptcy court need not yield. The order, so far as it joined Horowitz as a party, was therefore valid.

On the other hand, we can find no basis for enjoining the state action. If the two suits had been in rem, clearly there would have been none, for, as we have just said, Horowitz sued first. There remain only two possible grounds for an injunction: (1) that the action is against the bankrupt and can be enjoined under § 11 sub. a Bankr. Act, 11 U.S.C.A. § 29 sub. a; (2) that, there being two actions pending, the second must abate till the first is con-

509

cluded. As to the first ground, Horowitz did not sue the bankrupt and need not sue it now; indeed it would not now be even a proper party, for all its rights have passed to the trustee. Moreover, § 11 sub. a is intended to protect bankrupts against liabilities from which they will be discharged. As to the second ground, the plea lis alibi pendens, in the first place Horowitz's action was the earlier, and in the second the plea is not good as between a state and a federal court anyway. Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Southern Railway Co. v. Painter, 314 U.S. 155, 62 S.Ct. 154, 86 L.Ed. 116. Both actions may therefore proceed side by side; if Horowitz succeeds in getting judgment before the bankruptcy suit goes to judgment, he may plead his judgment in the suit with whatever effect as an estoppel it should have. On that we do not pass. Similarly, if the bankruptcy suit goes to judgment before Horowitz's action does, the Agency and the Peerless Company may make such use of it as an estoppel as the state court will allow, or the trustee may do so, if the state court will let him intervene. In so far as the order enjoined the prosecution of the state court it will therefore be reversed; in other respects it will be affirmed.

Order modified, and as modified affirmed.