In the Matter of AMERICAN SOUTH-
ERN PUBLISHING COMPANY,
Bankrupt.
The FIRST NATIONAL BANK OF
MOBILE, Appellant,

v.

George Lewis BAILES, Jr., the Trustee,
Appellee.

No. 27558.

United States Court of Appeals,
Fifth Circuit.

April 20, 1970.

Rehearing Denied and Rehearing En
Banc Denied May 25, 1970.

---

T. Massey Bedsole, Louis Braswell, Mobile, Ala., for appellant.

R. Clifford Fulford, Birmingham, Ala., for appellee.

Before BELL, AINSWORTH, and CARSWELL, Circuit Judges.

BELL, Circuit Judge:

This appeal arises out of a turn-over proceeding brought by a trustee in bankruptcy against The First National Bank of Mobile to recover funds derived from

the sale of certain books. The trustee and the bank had previously stipulated that the books would be sold and that the question whether the bankruptcy court had summary jurisdiction would be decided on the basis of the proceeds standing in lieu of the books.

The single issue to be resolved is whether the bankruptcy court correctly determined that the books were in the constructive possession of the bankrupt at the time of the initial petition in bankruptcy and, therefore, within that court's summary jurisdiction. The district court affirmed the ruling of the referee that summary jurisdiction was appropriate. We disagree.

The bankrupt, American Southern Publishing Company, a book publisher, entered into contracts with the State of Alabama to supply certain textbooks for the Alabama public schools. The books involved in the present case were held in an independent warehouse, Publishers' Warehouse Division of EBSCO Investment Services, in Birmingham pursuant to a depository contract between the bankrupt and the warehouse. Under that contract, the warehouse acted as bankrupt's agent in the distribution of the textbooks to the Alabama schools.

On June 24, 1966, at bankrupt's request, the warehouse prepared a certified inventory of bankrupt's books held by the warehouse. The bankrupt mailed this document to the bank on June 25, 1966, referring to it in a cover letter as "Notarized official warehouse receipts from Publishers' Warehouse."

On July 7, 1966, bankrupt wrote the warehouse that it had "concluded a working agreement" with the bank for a loan, "and as a form of collateral we made a consignment of our inventory now warehoused in the Publisher's Warehouse." The bank wrote the warehouse on July 21, 1966, asking that the warehouse recognize the assignment of

the inventory by the bankrupt. The warehouse responded on August 19, 1966, in a letter to the bank as follows: "We hereby agree, to the extent we can legally do so, that we will not ship any more of said books from our warehouse without your consent."

On July 19, 1966, the bankrupt made the bank a loss payee under the fire insurance policy on the books in the warehouse. Bankrupt wrote the State of Alabama on August 15, 1966, directing that warrants in payment of textbooks be made payable to the bank, for the bankrupt's escrow account, and be mailed directly to the bank. The State complied with bankrupt's direction in this regard.

It became burdensome for warehouse to obtain bank's consent for small, individual orders from teachers for only a few books. Bank, bankrupt, and warehouse, therefore, agreed on September 12, 1966, that bank's consent would be unnecessary for these very small shipments, payment for which would be made to the warehouse. Such orders represented only a small percentage of total sales.

The warehouse consistently sought and obtained the bank's approval before books were shipped to Alabama school purchasers. Even when bankrupt itself needed textbooks to furnish as complimentary copies, it asked the bank to send its consent to the warehouse for the release of these books.

From August 22 to September 30, 1966, bankrupt executed ten promissory notes payable to the bank totaling $109,-087.57. Each of the notes [1] stated that it was secured by the pledge of "Books valued at $166,980.95 covered by (warehouse's) receipt dated June 24, 1966. Copy of receipt attached hereto." The certified inventory prepared by warehouse was attached to each of the notes.

---

[1]. The total amount of indebtedness which the bank claims to be secured by the pledge ($109,087.57) does not include a note executed on September 20, 1966, which purported to be secured by the assignment of an invoice to the State of Alabama. Consequently, that note is not a part of this case.

On October 7, 1966, bankrupt filed its petition in bankruptcy. The bank and the trustee then agreed that the books should be sold in the regular course of business utilizing the procedures established before bankruptcy. They also agreed that the proceeds should be held by the bank in the same status and subject to the same rights of the parties as they had with respect to the books themselves. The trustee initiated this turnover proceeding in the bankruptcy court, claiming that summary jurisdiction was appropriate because the books were in the constructive possession of the bankrupt at the time the bankruptcy petition was filed. The bank objected to the referee taking summary jurisdiction, contending that warehouse held the books for the bank rather than the bankrupt and that the books, therefore, were in the bank's possession.

After a hearing, the referee overruled the bank's objection to summary jurisdiction and, on the same evidence, ordered the bank to turn over the funds to the trustee. The bank filed petitions to review both the order denying the bank's objection to summary jurisdiction, and the order directing turn over. The district court affirmed the decision of the referee. We reverse.

■■■ It is settled that the Bankruptcy Courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. Thompson v. Magnolia Petroleum Company, 1940, 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876. And at the outset of a bankruptcy proceeding, the referee has a right and a duty to inquire into and decide whether it has that actual or constructive possession which is essential to its jurisdiction to proceed. Harris v. Avery Brundage Co., 1938, 305 U.S. 160, 163, 59 S.Ct. 131, 83 L.Ed. 100; Taubel-Scott-Kitzmiller Co. v. Fox, 1924, 264 U.S. 426, 433, 44 S.Ct. 396, 68 L.Ed. 770. The referee followed this procedure and it is the referee's holding that the facts constituted a showing of constructive possession in the bankrupt that is the subject of the dispute here. The issue turns on the validity of this conclusion. There is no real dispute as to the underlying facts.

■■ Upon the filing of a petition in bankruptcy, all of the property in the alleged bankrupt's actual or constructive possession is said to pass at once into the custody of the bankruptcy court and become subject to its summary jurisdiction. Babbitt v. Dutcher, 1910, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402; Mueller v. Nugent, 1902, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405. Section 70a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110 (a) (5). See generally 2 Collier on Bankruptcy, (14th ed.) §§ 23.03 et seq., and particularly § 23.05. A court of bankruptcy, however, has no jurisdiction to adjudicate in a summary proceeding a controversy as to property held adversely to the bankrupt estate, without the consent of the adverse claimant. Harrison v. Chamberlin, 1926, 271 U.S. 191, 193, 46 S.Ct. 467, 70 L.Ed. 897.

■ In the instant case, the bank is an adverse claimant and the referee found the bank's claim to be substantial, and not merely colorable. A substantial claim alone does not, however, prevent summary jurisdiction; the question is possession.

The referee and the district court concluded that the warehouse originally was bailee for bankrupt and that the subsequent actions of the parties were not sufficient to change the possession by the bailee from its original character as possession for the bankrupt. The reasoning was that the bank obtained only a negative veto power without ever having the affirmative control over the books which was thought to be necessary for possession.

■ The proposition, if established factually, that property in the physical possession of a bankrupt's agent or bailee is in the constructive possession of the bankrupt would sustain summary jurisdiction. Here it is without dispute that bankrupt could not take actual possession of the books. The warehouse,

under the agreements, could surrender possession to the bankrupt only with the approval of the bank. The books were being held by the bailee subject to the order of the bank.

The Second Circuit has held that summary jurisdiction over property in the hands of third parties rests on the condition that the property is in the possession of one who acknowledges that he holds it subject to the bankrupt's demand. Buss v. Long Island Storage Warehouse Co., 2 Cir., 1933, 64 F.2d 338. Judge Learned Hand stated for the court "that for the jurisdiction to attach, the bailee must be unconditionally subject to the bankrupt's orders." We agree with this statement of the law. See also Green v. H. E. Butt Foundation, 5 Cir., 1954, 217 F.2d 553; Goggin v. Consolidated Liquidating Corp., 9 Cir., 1951, 190 F.2d 553; cf. Jackson v. Sports Co. of Tex., Inc., 5 Cir., 1960, 278 F.2d 716.

Here the bankrupt did not have unconditional control over the books in the hands of the warehouse. Indeed, the evidence indicates that bankrupt had little control if any at all. In bankrupt's words, they had been consigned to the bank as collateral. All actions relating to the books were subject to the bank's approval. The relationship between the bankrupt and the warehouse cannot support a finding of constructive possession. Summary jurisdiction was inappropriate.

This ruling is, of course, without prejudice to the resolution of the proper disposition of the contested funds in a plenary proceeding.

Reversed for dismissal of the turnover petition in the bankruptcy court for lack of summary jurisdiction.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BELL and AINSWORTH, Circuit Judges.*

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.