544 F.2d 925
 In the Matter of LAND INVESTORS, INC., Debtor,
and
Gerald Jolin, Bankrupt.
Pierce H. BITKER, Trustee in Bankruptcy of Gerald Jolin,
Bankrupt, Petitioner-Appellee and Cross-Appellant,
v.
WHYTE, HIRSCHBOECK, MINAHAN, HARDING & HARLAND (now, Whyte &
Hirschboeck, S.C.) and Kersten & McKinnon,
Attorneys at Law, Respondents-Appellants
and Cross-Appellees.
 Nos. 76-1254, 76-1255.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 27, 1976.
Decided Nov. 16, 1976.
 
 Victor M. Harding, George P. Kersten, Milwaukee, Wis., for respondents-appellants.
 R. Arthur Ludwig, Milwaukee, Wis., for petitioner-appellee.
 Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WOLLENBERG, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 These cross-appeals arise from an order of the district court, which affirmed an order of the bankruptcy court, requiring the respondents to turn over to Bitker, the trustee of the bankrupt Jolin, certain proceeds of a state court judgment in Jolin's favor, entered prior to, but affirmed and satisfied after, the filing of bankruptcy. The issues are whether the bankruptcy court had the summary jurisdiction it exercised, a precondition of such a turnover order, and, if it did, whether the order in this case was proper.
 
 
 2
 The underlying facts are not in dispute. In 1966, Jolin commenced a state court lawsuit against his former business partner, one Oster. George P. Kersten and his law firm, Kersten & McKinnon (Kersten), and a Chicago law firm not involved here were Jolin's counsel. In late 1967, Victor M. Harding and his law firm, Whyte, Hirschboeck, Minahan, Harding & Harland (Harding), were substituted for the Chicago firm. Neither Harding nor Kersten had a written fee arrangement with Jolin. Harding apparently undertook representation on the oral understanding with Jolin that compensation would be on a straight hourly basis, plus expenses, but when it developed that Jolin would be unable to pay such fees, an oral agreement was made for a fee based on the amount and difficulty of services provided and the degree of success achieved, contingent on success. Kersten had a contingent fee oral agreement from the outset.
 
 
 3
 The litigation was vigorously contested, and proved protracted and expensive to prosecute. A trial in 1968 yielded a verdict for Oster, but Kersten and Harding were able to get it reversed on appeal. A second trial, in 1970, resulted in a judgment of $161,000 for Jolin. Oster appealed, but the Wisconsin Supreme Court affirmed the judgment in June 1972 and denied rehearing in September of that year. Jolin v. Oster, 55 Wis.2d 199, 198 N.W.2d 639 (1972).
 
 
 4
 During the pendency of this litigation, Jolin's financial situation deteriorated. Unable to pay legal fees in excess of $18,000 to Harding for services provided in establishing the corporation Land Investors, Inc. (Land Investors) and in registering its securities (services unrelated to the Oster litigation), Jolin, in 1969, assigned to Harding $15,000 of any proceeds of the Oster suit as payment in full. In 1970, prior to the second Oster trial, Jolin assigned an unspecified amount of any proceeds of the suit to Thorp Finance Corporation (Thorp), equal to the sum of his and Land Investors' obligations to Thorp, as additional collateral to secure loans made by Thorp to finance Land Investors. The Thorp assignment was expressly subordinate to attorneys' liens and the $15,000 Harding assignment.
 
 
 5
 In early 1972, both Jolin and Land Investors filed bankruptcy petitions. Because of a misunderstanding on Harding's part the accompanying asset and liability schedules, which his firm prepared, included the Oster judgment and claims thereon with respect to Land Investors, but not with respect to Jolin. Neither Land Investors' trustee, Verbest (not a party to this appeal), nor Bitker made any attempt to intervene in or in any way influence the final stages of the Oster lawsuit, then on appeal. When the judgment was affirmed, a check for $178,110.44 drawn to both trustees, Thorp, and Kersten and Harding as attorneys for Jolin was issued in satisfaction. Harding negotiated it to his firm's trust account, without objection or written approval by the trustees or the bankruptcy court. When the parties were unable to agree on the proper distribution of the sum, Harding distributed it as follows:
 
 
 6
 Harding and Kersten,
 for legal services $ 83,145.75
Harding and Kersten,
 for disbursements 12,403.01
Harding,
 per assignment 15,000.00
Thorp,
 per assignment 63,041.68
Retained in trust fund for the
 benefit of the trustees 4,520.00
 -----------
 $178,110.44
 
 
 7
 Both trustees filed a joint petition with the bankruptcy court to have Kersten and Harding turn over the entire proceeds of the judgment and to have the court determine the validity and amounts of the claimed liens and assignments. A motion by Kersten and Harding to dismiss the petition for want of the bankruptcy court's summary jurisdiction was denied, and the bankruptcy court subsequently determined a 40% fee to be reasonable compensation, accepted the validity of the assignment payments to Thorp and Harding, and ordered the turnover to Bitker of the remainder of the judgment proceeds, $23,382.78, plus interest. The district court affirmed this order in its entirety.
 
 
 8
 On appeal, Kersten and Harding argue that the entire summary proceeding was invalid, because the judgment proceeds were entirely assigned away and were not part of the bankrupt estate, and because the proceeds were held by them (and Thorp) as adverse claimants with bona fide claims. They also assert that the bankruptcy court, even if it had jurisdiction, improperly determined the amount of attorneys' fees contrary to the evidence. On cross-appeal, the trustee insists that the bankruptcy court erred in sustaining the $15,000 Harding assignment, and in refusing to deduct that sum and the interest earned on the Oster judgment in calculating the 40% fee on that judgment.
 
 I. The Question of Summary Jurisdiction
 
 9
 Section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7), creates original jurisdiction in federal bankruptcy courts to
 
 
 10
 (c)ause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided . . . .
 
 
 11
 As courts of equity, charged with the duty of assuring the fair and efficient settlement of the estates of bankrupts, bankruptcy courts characteristically and properly exercise their jurisdiction in summary fashion. Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). It is "elementary bankruptcy law," id., that this summary jurisdiction exists as to all property in the actual or constructive possession of the court on the date the bankruptcy petition is filed:
 
 
 12
 Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy. (Footnote omitted.)
 
 
 13
 Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); accord, Cline v. Kaplan, 323 U.S. 97, 98, 65 S.Ct. 155, 89 L.Ed. 97 (1944); Taubel-Scott-Kixmiller Co., Inc. v. Fox, 264 U.S. 426, 432-33, 44 S.Ct. 396, 68 L.Ed. 770 (1924); In re American National Trust, 426 F.2d 1059, 1065 (7th Cir. 1970); In re Patrick, 194 F.2d 750, 752 (7th Cir. 1952); 2 Collier on Bankruptcy P 23.04(2), at 453 (14th ed. 1975).
 
 
 14
 Appellants Kersten and Harding do not dispute that this is the law; they urge instead that it does not apply here. Their argument is based on the proposition that property which is held by a third party under a bona fide and substantial adverse claim is not subject to summary bankruptcy jurisdiction. In such cases, they insist, the property holder/claimant cannot be denied the right to litigate his claim in a plenary suit brought in a proper court.[1] We do not doubt that appellants have correctly stated a rule of law, see Cline v. Kaplan, supra; Taubel-Scott-Kixmiller Co., Inc. v. Fox, supra; 2 Collier on Bankruptcy, supra, P 23.04(2), at 453-55, 464, but we find it has no application to the facts of this case.
 
 
 15
 The fundamental concept underlying summary jurisdiction is actual or constructive possession of the property in question by the bankruptcy court. Thompson v. Magnolia Petroleum Co., supra; In re American National Trust, supra; 5 J. Moore, Federal Practice P 38.30(3), at 221 (2d ed. 1976). If the court has such possession, it has summary jurisdiction; if, instead, possession of the property is in the hands of a bona fide adverse claimant,[2] no summary jurisdiction exists.[3] As we have noted, the time to judge possession is the time of filing of the bankruptcy petition. In many cases, the statement of these rules and their straightforward application would provide a ready answer to the question of the propriety of summary jurisdiction. The matter is somewhat complicated here by the fact that the property in question on the filing date was a judgment, an intangible, and not readily capable of "possession" in the ordinary sense. In such cases, the doctrine of constructive possession is applied and suffices to confer summary jurisdiction on the bankruptcy court if the bankrupt was the legal owner of the intangible at the time of filing. As this court stated In re Marsters, 101 F.2d 365, 367 (7th Cir. 1938), cert. denied sub nom. Herman v. Henley, 306 U.S. 663, 59 S.Ct. 788, 83 L.Ed. 1059 (1939):
 
 
 16
 In the case of a tangible there can be a possession in fact as well as in legal theory; but in the case of an intangible, possession is a legal concept and is manifested only through recognition of legal consequences. It may be said that ownership of intangibles is the subject of possession, or that ownership draws to itself a constructive possession, but such statements merely afford a rational basis for the practical rule that the legal consequences of possession of a tangible res are attached to the ownership of an intangible res. One of the legal consequences of a bankrupt's possession of a tangible asset is that his trustee succeeds to the possession, and the bankruptcy court thereby acquiring possession, has summary jurisdiction to adjudicate adverse claims respecting the asset.
 
 
 17
 Accord, In re Rubin, 378 F.2d 104, 109 (3d Cir. 1967); In re Wiltse Brothers Corp., 357 F.2d 190, 193 (6th Cir. 1966); Kohn v. Myers, 266 F.2d 353, 355 (2d Cir. 1959); Benton v. Callaway, 165 F.2d 877, 882 (5th Cir. 1948), aff'd, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949); In re Worrall, 79 F.2d 88, 90 (2d Cir. 1935); 2 Collier on Bankruptcy, supra, P 23.05(4), at 489; cf. England v. Nyhan, 141 F.2d 311 (9th Cir. 1944).
 
 
 18
 Appellants urge that Jolin had heavily encumbered his future judgment prior to bankruptcy, and the record and decisions below amply support this assertion. Nonetheless, a bankruptcy trustee "succeeds to a bankrupt's title to encumbered property, subject to the encumbrance." In re Chicago, R. I. & P. Ry. Co., 155 F.2d 889, 892 (7th Cir. 1946), rev'd on other grds. sub nom. Fleming v. Traphagen, 329 U.S. 686, 67 S.Ct. 365, 91 L.Ed. 602 (per curiam). Because title creates the constructive possession necessary for jurisdiction, jurisdiction can be defeated only if the encumbrances in question have totally divested the bankrupt of his title. An absolute outright assignment would generally have this effect; conditional or partial assignments would not. Schwartz v. Horowitz, 131 F.2d 506 (2d Cir. 1942); In re Marsters, supra; In re Prince, 89 F.2d 681 (2d Cir. 1937); In re Worrall, supra; Street v. Pacific Indemnity Co., 61 F.2d 106 (9th Cir. 1932), cert. denied, 297 U.S. 718, 56 S.Ct. 595, 80 L.Ed. 1003 (1936); In re Borok, 50 F.2d 75 (2d Cir. 1931); 2 Collier on Bankruptcy, supra, P 23.05(4), at 489-90.
 
 
 19
 Both the bankruptcy court and the district court have concluded that the liens and assignments created by Jolin on his judgment did not divest him of his title thereto, and we can see no reason to disturb their findings. The action was prosecuted throughout in Jolin's name, and the record contains repeated admissions by Harding that Jolin was the real, not just the nominal, party in interest, that Jolin retained the right to continue and control the litigation, and that Jolin was his client all the way through. Moreover, a substantial portion of the encumbrance urged by appellants, the "assignment" to Thorp, was not an outright assignment made in payment of a specified part or all of Jolin's or Land Investors' debts to Thorp, but was instead merely additional collateral security for payment. An "assignment" in such circumstances is intrinsically conditional on the debtor's nonpayment of the underlying debt, and does not pass title. Thus this court held In re Muntz TV Inc., 229 F.2d 228 (7th Cir. 1956), that money or property even in the hands of a third party creditor was within the reach of the constructive possession doctrine and supported summary jurisdiction, when that money or property was given to the third party merely as security for debts. The same point was made In re American National Trust, supra, 426 F.2d at 1065, although a different result was reached because the money there involved was contract earnest money, title to which had passed on delivery. Other decisions recognizing the difference, for summary jurisdiction purposes, between outright assignments with rights of title and control and those merely for security purposes include Schwartz v. Horowitz, supra; Street v. Pacific Indemnity Co., supra; and In re Borok, supra. We note also, with reference to appellants' argument that Jolin had divested himself of all interest in the Oster judgment, that in their unauthorized distribution of the judgment proceeds over $4000 was retained for the benefit of the trustees after appellants had satisfied their asserted liens and assignment and the assignment to Thorp. We conclude that the district court did not err in affirming the finding of the bankruptcy court that Jolin retained the title to and possession of his judgment which were necessary to sustain summary jurisdiction.
 
 
 20
 The cases relied upon by appellants do not suggest a different result. In re Chicagoland Ideel Cleaners, Inc., 495 F.2d 1283 (7th Cir. 1974), aff'd sub nom. Phelps v. United States, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), does support the notion that adverse possession sufficient to defeat summary jurisdiction can be found where the property in issue was not actually held by the claimant, but it does so in the unique context of a federal tax lien, fully effected as a levy by notice which, this court held, gave the Government "full legal rights in the property levied upon." Id. at 1285. Likewise, the Fifth Circuit's decision In re American Southern Publishing Company, supra, 426 F.2d 160, is not in point. The court there did find a lack of summary jurisdiction where the bankrupt's books in a warehouse had been assigned as collateral for bank loans. But, unlike this case, the bank had full control of the books (the warehouse having been notified), it exercised that control as to the release of books to be shipped to buyers, and it received the payments made on the books shipped. No comparable circumstances exist here.
 
 
 21
 To the degree appellants' argument is that the proceeds of the judgment were tangible property actually possessed by them under an adverse claim and never within the possession of the bankrupt, the trustee, or the bankruptcy court, we totally disagree. At the critical time of bankruptcy filing, Jolin had title to and possession of the judgment which passed to his trustee, and the summary jurisdiction of the bankruptcy court attached. We will not honor appellants' unauthorized attempt to circumvent that jurisdiction by distributing the proceeds at a later date. See Street v. Pacific Indemnity Co., supra, 61 F.2d at 109.[4]
 
 II. The Calculation of the Attorneys' Lien
 
 22
 The bankruptcy court found that Kersten and Harding had a valid attorneys' lien for services rendered in the Oster litigation, the district court affirmed that finding, and trustee Bitker does not pursue his objection on cross-appeal. The sole question presented is whether the extent of the lien was correctly assessed below. On this point, cross-appeals were taken. We hold that no error was committed in calculating the extent of the lien.
 
 
 23
 Kersten and Harding ask us to hold that the bankruptcy court did not have the authority to determine the extent of their lien on a "reasonable fee" basis. To the extent this is merely a suggestion that the intervention of bankruptcy did not vitiate their lien, we need not quarrel with them. The order appealed from recognizes and preserves that lien. However, to the degree appellants suggest that the bankruptcy court could not determine the extent of the lien, we must disagree. Our holding that the bankruptcy court had summary jurisdiction of the judgment proceeds necessarily in this case includes the corollary that it could determine the validity and extent of encumbrances thereto. See Sanders v. Providence Washington Insurance Company, 442 F.2d 1317 (8th Cir. 1971); Jackson v. Vance, 179 F.2d 154 (10th Cir. 1949), cert. denied, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950).
 
 
 24
 Appellants cite Sherman v. Buckley, 119 F.2d 280 (2d Cir. 1941), cert. denied, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527; United States v. Transocean Air Lines, Inc., 356 F.2d 702 (5th Cir. 1966); and In re Prudence Co. Inc., 96 F.2d 157 (2d Cir. 1938), cert. denied sub nom. McGrath v. Davison, 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393, to support their contrary argument, but each case is readily distinguishable. In Sherman the Second Circuit refused to hold that the bankruptcy court could not exercise its summary jurisdiction even to liquidate an attorneys' lien in a proper case. The court did hold that because the bankruptcy trustee, with the permission of the court, had substituted attorneys in an ongoing state court action in the interest of the bankrupt, and the state court as a condition of substitution fixed the amount of the outgoing attorneys' lien, the trustee could not later enjoin state court proceedings to enforce the incidents of the state court jurisdiction once accepted. Likewise, in Transocean, the federal district court in which a bankrupt's action had been pending entered an order granting the bankrupt's initial attorneys' charging lien once the trustee and the defendant settled the case. The court of appeals affirmed, finding that the district court had authority to enforce the lien, and noting that the trustee raised no objection to that court's jurisdiction. We need not consider whether the state courts of Wisconsin may have had jurisdiction to determine and enforce appellants' lien, because those courts did not purport to do so. In response to appellants' argument that trustee Bitker had no other option than to seek such a determination in the state courts, we note only that neither of the cited cases supports such an absolute rule, and that we would be extremely slow to impose such a duty on a trustee when the schedule of Jolin's assets filed in the bankruptcy proceedings, prepared by appellant Harding, did not even include the Oster judgment. Bitker did not concede full actual notice of the Oster proceedings, and appellants point to no evidence of such notice, other than communications with the trustee of the corporate bankrupt which can not be presumed to be binding on Bitker. The fact that Harding's omission in scheduling was in good faith does not serve to create a duty in the trustee.
 
 
 25
 Nor does the Prudence case support appellants' argument that the bankruptcy court could not determine the extent of the lien contrary to the attorney-client contract. For in Prudence, as in Transocean and Sherman, a specific contingent fee percentage agreement was demonstrated and enforced. Here, of course, the record fully supports the findings of the courts below that while a contingent fee was agreed to, the precise extent thereof was not. In these circumstances the bankruptcy court had no real alternative to determining a reasonable contingent fee for the Oster case. It was not obliged to accept on their face appellants' conclusions as to the amount of such a fee.
 
 
 26
 Having decided that the bankruptcy court had summary jurisdiction over the Oster judgment proceeds and the authority to determine the extent of appellants' lien on a reasonable fee basis, we have little difficulty affirming the courts below on the substance of the turnover order. Rule 810 of the Rules of Bankruptcy Procedure provides that on review of a bankruptcy court's decision by the district court, that court "shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses." Nor are we free, on review of the district court's review, to adopt a more rigorous standard for assessing the facts determined below.
 
 
 27
 Under this standard, we conclude there was no such error committed here. Appellants insist that the bankruptcy court should have accepted the conclusions of their expert witness that a fee of at least 46.7% of the judgment was reasonable. Although this was the only expert testimony offered, both the conclusions and the methods of their derivation were vigorously contested on cross-examination. Moreover, certain discrepancies in the hourly fee calculations submitted were noted by the bankruptcy court as was the fact that Harding's estimate of the Oster fees, submitted in the bankruptcy schedule of Land Investors' assets and liabilities after the great bulk of the legal work on the case had been concluded, was substantially below the level of 46.7% of the judgment, and was in fact substantially less than the fee awarded by the bankruptcy court. In view of these facts, we are convinced no clear error was committed in calculating a 40% fee on the recovery.
 
 
 28
 On cross-appeal, trustee Bitker urges that the bankruptcy court erred by including, in the figure to which the 40% fee was applied, the $15,000 portion of the judgment which had been assigned to Harding and the interest earned on the judgment. Bitker cites no authority by which we might find such a calculation to have been an error of law, and we see no reason to declare it a clear error of fact in finding a reasonable fee. It is apparent to us that the bankruptcy court in exercising its essentially equitable jurisdiction was reconciling competing claims to property in an effort to reach an overall fair resolution of the controversy before it. See Katchen, supra, 382 U.S. at 327, 86 S.Ct. 467. What we regard as a completed package arrived at by a process which no doubt included some balancing should not be quickly upset by this court. The appellants created an asset by dint of extensive and effective work on their part. The fees they claimed were substantially reduced. We also note some incongruity in the trustee's arguing here that the bankruptcy court abused the very discretion in determining a reasonable fee that the trustee insists, as pertinent to Harding's and Kersten's appeal, was properly exercised. In sum, we decline the invitation to separate out from the equitably created messuage the minor outbuildings to which the trustee points.
 
 III. The Validity of the $15,000 Assignment
 
 29
 Also on cross-appeal, the trustee urges us to find that the courts below erred in finding the assignment to Harding to have been based on adequate consideration. We will not second-guess these factual determinations. The record manifestly supports the conclusion that the assignment of $15,000 of a speculative future judgment as payment in full for already accrued legal bills in excess of $18,000 was made in exchange for adequate consideration.
 
 
 30
 For the reasons stated herein, the order of the district court, affirming the turnover order of the bankruptcy court, is
 
 
 31
 AFFIRMED.
 
 
 
 *
 Albert C. Wollenberg, Senior District Judge of the Northern District of California, is sitting by designation
 
 
 [1]
 Appellants assert that there being no diversity between the parties in this proceeding, the only proper forum for such a plenary action would be the state courts. Because we find summary jurisdiction to have been proper in this case, it is not necessary for us to consider the question
 
 
 [2]
 Where the property is held by a third party without a bona fide and substantial adverse claim, the bankruptcy court is considered to have constructive possession of the property and, accordingly, to have summary jurisdiction. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100 (1938); Taubel-Scott-Kixmiller Co., Inc. v. Fox, supra. It is with reference to this rule that decisions, such as that of this court In re Process-Manz Press, Inc., 369 F.2d 513 (7th Cir. 1966), cert. denied sub nom. Limperis v. A. J. Armstrong Co., Inc., 386 U.S. 957, 87 S.Ct. 1022, 18 L.Ed.2d 104 (1967), cited by appellants, hold that bankruptcy courts should make preliminary determinations as to the substantiality of the claims of third party possessors before exercising summary jurisdiction. Where, as here, a third party claimant does not have possession of the property in question on the date of bankruptcy filing, there is no need for such a determination. A third party claim, no matter how substantial, does not defeat summary jurisdiction unless accompanied by possession in the claimant. See In re American Southern Publishing Company, 426 F.2d 160, 163 (5th Cir. 1970), cert. denied sub nom. Bailes v. First National Bank of Mobile, 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140
 
 
 [3]
 Section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7), provides that an adverse party in possession of property may consent to jurisdiction by failing to object, but appellants properly point out that their objection to summary jurisdiction was timely and has not been so waived
 
 
 [4]
 We note, however, that even had appellants received the check satisfying the Oster judgment on the day before filing, there is substantial doubt that a different result would obtain. Harding and Kersten were payees on the check only as attorneys for Jolin, and it is well established that the bankruptcy court has constructive possession of the bankrupt's property held by an agent. Harris v. Avery Brundage Co., supra, 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; In re Naviera Azta, S.A., 500 F.2d 390 (5th Cir. 1974) (per curiam). There is doubt that property so held can be the subject of an adverse claim, id., and see 2 Collier on Bankruptcy, supra, P 23.06(3), at 505, but we need not resolve that question here