HARLINGTON WOOD, Jr., Circuit Judge.
This appeal concerns certain debts owed by the debtor, Curtis A. Kimzey, to First National Bank of Red Bud, Illinois. The bankruptcy court held that $4,447.47 of Kimzey’s debt to the bank was nondis-chargeable in bankruptcy under 11 U.S.C. § 523(a)(2) and another $5,230.00 was non-dischargeable under 11 U.S.C. § 523(a)(6). The district court affirmed the bankruptcy court’s decision, and the debtor appealed. We affirm with respect to section 523(a)(2) but reverse the holding that $5,230.00 was nondischargeable under section 523(a)(6).
I.
Curtis A. Kimzey, first with a partner and later by himself, owned a small chemical company that sold herbicides, cleaning supplies, and other chemicals to institutional customers. After Kimzey’s partner left the company for health reasons, Kimzey tried to operate it by himself, but he soon encountered financial problems and, on February 19, 1982, Kimzey filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.
Appellee First National Bank of Red Bud brought this action to have several debts owed by Kimzey to the bank declared non-dischargeable. The first group of debts concerned money borrowed by Kimzey to *423 pay his suppliers pending payment to him from his customers. According to Kimzey, when his partner left the company, he had insufficient working capital and his suppliers, knowing of his financial difficulties, required Kimzey to prepay all orders. Kimzey approached the bank and, he claimed, the bank officers agreed that Kim-zey could bring purchase orders from customers to the bank, the bank would loan him an amount equal to the orders, and Kimzey would then use this money to purchase merchandise from his suppliers to fill the orders. The bank officials, however, testified that they agreed to loan Kimzey money for his accounts receivable, i.e., for money due from customers for merchandise already shipped. When Kimzey filed for bankruptcy, the bank had advanced money on thirteen orders for which Kimzey had not shipped the goods. The bank claimed that these loans were obtained by a false representation that the goods had been shipped and, therefore, were nondis-chargeable under section 523(a)(2)(A). The bankruptcy court agreed with the bank, and the district court affirmed.
The bank also argued that a loan to Kimzey to purchase wax for an order from Southern Illinois University (SIU) was non-dischargeable under section 523(a)(6). Both Kimzey and the bank agree that when Kimzey submitted the low bid to SIU, the bank agreed to loan him $5,230.00 to buy the wax from his suppliers. The alleged conversion occurred when the check from SIU was deposited in Kimzey’s account rather than endorsed to the bank to satisfy the debt. According to Kimzey, the check had arrived while he was out of town, his wife accidentally deposited it in the Kimzey Chemical Company account, and she had written several checks on the account, although most of the money was still in the checking account and would be subsequently used to pay other debts to the bank. In any event, on February 6, 1981, the bank and Kimzey agreed to consolidate the $5,230.00 debt with several other debts in a note for $8,015.76. In the year between the making of this note and Kimzey’s petition for bankruptcy, Kimzey paid approximately $2,700.00 on the note. Again, the bankruptcy court agreed with the bank and found the debt of $5,230.00 nondischargeable under section 523(a)(6).
II.
When a- district court reviews a decision of the bankruptcy court, the district court must accept the bankruptcy court’s findings of fact unless they are clearly erroneous. Fed.R.Bankr.P. 8013 (West 1984). The court of appeals also must restrict its review of factual findings to this narrow standard. See In re Land Investors, Inc., 544 F.2d 925, 933 (7th Cir. 1976). Of course, the clearly erroneous rule does not apply to review of the bankruptcy court’s conclusions of law. See In re Evanston Motor Co., 735 F.2d 1029, 1031 (7th Cir.1984); see also Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).
A.
The bank argues that Kimzey’s representation to the bank that the thirteen purchase orders were invoices of goods already shipped satisfies the requirements of 11 U.S.C. § 523(a)(2)(A). That section provides that a Chapter 7 discharge does not relieve the debtor from any debt “for obtaining money ... [by] false pretenses, a false representation, or actual fraud.” 11 U.S.C. § 523(a)(2)(A) (1982). To succeed on a claim that a debt is nondischargeable under section 523(a)(2)(A), a creditor must prove three elements. First, the creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. Carini v. Matera, 592 F.2d 378, 380 (7th Cir.1979). The creditor also must prove that the debtor possessed scienter, i.e., an intent to deceive. Gabellini v. Rega, 724 F.2d 579, 581 (7th Cir.1984).' Finally, the creditor must show that it actually relied on the false representation, and that its reliance was reasonable. Carini, 592 F.2d at 381. The party objecting to discharge *424 must prove the facts establishing each element by clear and convincing evidence. See In re Brink, 30 B.R. 28, 30 (Bankr.W.D.Wis.1983); In re Aldrich, 16 B.R. 825, 88 (Bankr.W.D.Ky.1982).
Appellant Kimzey contends that the bank failed to prove any of the elements for nondischargeability under section 523(a)(2)(A); we disagree. The bank officers testified that their agreement with Kimzey was to loan him the sale price of merchandise already shipped. Furthermore, the bankruptcy trustee testified that Kimzey told him that the normal course of business was for Kimzey to present the bank with orders for merchandise already shipped. Although Kimzey claims the agreement was for sales orders rather than for goods already shipped, we defer to the credibility determination of the bankruptcy court, especially since the agreement in dispute was oral. See In re Martin, 698 F.2d 883, 885-86 (7th Cir.1983). We therefore hold that it was not clearly erroneous for the bankruptcy court to find that, when Kimzey received loans with the thirteen purchase orders for which he had not shipped the goods, Kimzey obtained money through a false representation.
As for the scienter element of a section 523(a)(2)(A) claim, an intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to make a loan. Carini, 592 F.2d at 380. Since, as the bankruptcy court found, the agreement was to loan money for orders Kimzey had already shipped, Kimzey knew or should have known that he could not obtain loans with the thirteen unshipped orders unless he represented to the bank that he had shipped the goods. It was therefore not clearly erroneous for the bankruptcy court to find that the bank had proved scienter.
Finally, Kimzey argues that since the bank officers knew of his financial difficulties, they could not reasonably rely on a representation that the loans were on accounts receivable for goods already shipped. But the evidence supports the bankruptcy court’s finding that the bank reasonably relied on Kimzey’s representations. Although the bank officers knew that Kimzey was short of capital, it was not unreasonable for them to believe — as they testified they did — that Kimzey needed loans on orders already shipped in order to finance supplies for future orders. In addition, each order was presented to the bank on a form labeled “INVOICE,” further suggesting that the goods had already been shipped. Thus the bankruptcy court’s finding that the bank reasonably relied on Kimzey’s false representations is not clearly erroneous and the court’s holding that the $4,447.47 debt was nondischargeable under section 523(a)(2)(A) is affirmed.
B.
The bank also claims that Kimzey’s $5,230.00 debt for the loan on the SIU order is nondischargeable because Kimzey converted the SIU check for his own benefit. Section 523(a)(6) provides that a debtor is not discharged from any debt “for willful and malicious injury by the debtor to another entity or the property of another entity,” 11 U.S.C. § 523(a)(6) (1982). A debt for willful and malicious conversion is nondischargeable under this exception. See In re Meyer, 7 Bankr. 932, 933 (Bankr.N.D.Ill.1981). The exception is narrowly construed, however, in order to effectuate the congressional policy of permitting bankrupts a fresh start. In re Rohm, 641 F.2d 755, 756-57 (9th Cir.), cert. denied sub nom. Gregg v. Rahm, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).
In the present case, we note two errors that would normally require a remand to the bankruptcy court. First, the bankruptcy court made no finding as to malice. Since a debt is nondischargeable under this section only if the conversion was both “willful” and “malicious,” id. at 756, the bankruptcy court’s finding that the conversion was intentional is not sufficient. In addition, we think the bankruptcy court erred in finding the entire $5,230.00 nondis-chargeable even though the bank admitted that Kimzey had paid almost $2,700.00 on the note. Part of this $2,700.00 undoubtedly went to interest and to principal on the *425 other debts, but at least part of the payments must have reduced the principal of the $5,230.00 debt. Despite these two errors, however, we do not remand this case because we think the bankruptcy court’s holding that the $5,230.00 is nondischargeable is reversible on another ground.
Debts found nondischargeable under section 523(a)(6) typically fall within one of two categories: (1) claims by a creditor that the debtor sold collateral subject to a security agreement, thereby depriving the creditor of its secured interest, see, e.g., In re Ries, 22 B.R. 343, 344-45 (Bankr.W.D.Wis.1982); or (2) attempts by creditors to have previously-entered judgments against the debtor found nondischargeable, see, e.g., In re Franklin, 726 F.2d 606, 610 (10th Cir.1984) (judgment against debtor doctor for medical malpractice). In the present case, the debt does not fit into either category; here the bank is trying to have the settlement — or, as Kimzey would call it, the novation — declared nondischargeable. We must therefore consider whether a debt owed as part of a settlement of a claim for willful and malicious conversion is nondischargeable under section 523(a)(6).
Our research has uncovered only one case in which a creditor tried to have a settlement agreement found nondischargeable. That case held that the debt was discharged, but provided little analytical support for its conclusion. See In re Akers, 1 Bankr.Ct.Dec. (CRR) 295, 296 (Bankr.W.D.Va.1974). It seems sensible, however, that a party who has settled a claim and received part of the settlement proceeds is not on equal ground with creditors whose claims fall within one of the two typical groups outlined above. When the debtor sells the secured collateral, the creditor’s security interest — its protection against the debtor’s bankruptcy — vanishes. See, e.g., In re Scotella, 18 B.R. 975, 976 (Bankr.N.D.Ill.1982). Finding the debt nondischargeable under section 523(a)(6) thus puts the creditor in the same position he would have been but for the willful and malicious conversion. Similarly, section 523(a)(6) protects injured parties who have hazarded the risks of litigation and obtained a verdict, only to have the debtor declare bankruptcy. See, e.g., In re Franklin, 726 F.2d at 608. Thus both of these types of creditors have suffered a willful and malicious injury, but have no remedy if the debts are discharged by the debtor’s bankruptcy.
We are not prepared to say that all settlements of willful and malicious conversions are dischargeable in bankruptcy. There may be some settlements that are not discharged.[1] Nevertheless, we hold that, on the particular facts of this case, the $5,230.00 debt was discharged. The bank never offered evidence to contradict Kimzey’s testimony that most of the proceeds of the SIU check were still in the company’s account when the bank discovered the conversion. Nor did the bank contradict Kimzey’s testimony that it was the bank — and not Kimzey — that suggested signing a new note for the entire amount of the SIU loan plus two other debts. The bank could have demanded instead that Kimzey return the proceeds still in the company’s account and sign a new note for the remainder. If the bank had done this, the money in the company’s account plus whatever Kimzey would have paid between signing a note for the remainder and declaring bankruptcy may have covered the total amount converted. But the bank did not choose this alternative; instead it had Kimzey sign a new note which included two other debts and assessed interest at 16%%. See generally Note, Creditor Acquiescence as a Defense to an Exception to Discharge in Bankruptcy, 58 Ind.L.J. 319, 329 (1982) (suggesting that a bank should not be able to allow irresponsible debtor conduct to continue in order to collect high finance charges and still be able to have the debt excepted from discharge in bankruptcy). After Kimzey filed for bankruptcy, the bank may have regretted the way it *426 settled the $5,230.00 debt, but we do not think the bank can now claim the $5,230.00 of the February, 1980 note is nondischargeable as a debt for willful and malicious conversion. Cf. In re Whitehead, 2 Bankr.Ct.Dec. (CRR) 1647, 1650 (Bankr.D.Utah 1976); In re Gibson, 1 Bankr.Ct.Dec. (CRR) 449, 450 (Bankr.S.D.Ohio 1974).
III.
For the foregoing reasons, the judgment of the district court is affirmed as to the $4,447.47 debt but reversed as to the $5,230.00 debt. Each party shall bear its own costs.

. For example, a debt might not be discharged if the debtor induces a creditor to settle a claim and intends to file for bankruptcy shortly thereafter. See 11 U.S.C. § 523(a)(2)(A) (1982).