**In the Matter of S. T. FOODS, INC., Bankrupt.**

United States District Court
S. D. New York.
Feb. 19, 1962.

Samuel P. Adelman, New York City, Alexander Henkin, New York City, of counsel, for trustee.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, Julius Rolnitzky, Sp. Asst. U. S. Atty., New York City, of counsel, for United States of America.

FREDERICK van PELT BRYAN, District Judge.

The principal issue raised by the trustee's petition to review is the same as that in Matter of Airline-Arista Printing Corporation, Bankrupt, 156 F.Supp. 403 (S.D.N.Y.1957), aff'd per curiam 2 Cir., 267 F.2d 333. In that case I held that federal income and social security taxes withheld by a debtor in possession from the salaries of its employees in a superseded proceeding for arrangement constituted a trust res in favor of the United States and were to be paid prior to costs and expenses of administration incurred either in the arrangement proceeding or in the ensuing bankruptcy proceeding. Such a trust was impressed upon all assets of the estate coming into the trustee's hands even though the taxes withheld were not segregated and could not be traced.

The trustee frankly concedes that the same question is presented here and that it is controlled by the Airline-Arista decisions. He asserts, however, that my decision below and the affirmance of that decision by the Court of Appeals is erroneous. He urges that I should reconsider the Airline-Arista decision and now decide that administration expenses in the bankruptcy proceeding take priority over the claim of the United States for withholding taxes withheld by the debtor in possession. Thus, what the trustee asks me to do is to overrule both my own prior decision in Airline-Arista and the decision of the Court of Appeals affirming it, as well as the prior decisions in this and other circuits on which the Airline-Arista decision was based. See City of New York v. Rassner, 127 F.2d 703 (2 Cir. 1942); United States v. Sampsell, 193 F.2d 154 (9 Cir., 1951), and Hercules Service Parts Corp. v. United States, 202 F.2d 938 (6 Cir. 1953).

I am, of course, bound by the determination of the Court of Appeals in Airline-Arista and required to follow it, but even if I were not I am not persuaded that the Airline-Arista case was incorrectly decided. On the contrary, I believe the decision is sound and well reasoned and I adhere to it. The decision and order of the referee in so far as it provides that the funds in the hands of the trustee are impressed with a trust in favor of the United States and that no part of the costs and expenses of administration may be paid therefrom is therefore affirmed.

The petitioner trustee, however, maintains that the referee was in error in refusing to make an allowance out of the fund to the attorney for the trustee for services alleged to have been rendered in creating or preserving the fund. He also urges that similar allowances should have been made to the trustee and the appraiser.

The record on this phase of the proceeding is confusing. In so far as the question was raised at the hearing before the referee, it came up in the following manner:

Toward the conclusion of the hearing counsel for the Government announced in open court that the Government consented to the payment out of the funds to which the United States was entitled of a sum not exceeding $200 "to the attorney for the trustee, who rendered services for the benefit of the United States". The attorney for the trustee then agreed to accept the amount offered or any lessor sum allowed him by the referee. He also mentioned, in passing, an endeavor "to convince the Government that compensation should be made to the trustee and the appraiser along the same line".

This passage between counsel occurred after the referee had granted a motion to strike the separate defenses in the trustee's answer to the Government's petition. The fifth such defense included an allegation "that the funds sought to be impressed with a trust by the petitioner is chargeable with the value of the services rendered to create such fund by the trustee, his attorney, and for other services rendered in these proceedings as more particularly set forth in the trustee's final report, the application of his attorney and the application of the appraiser which were filed prior to the final meeting and to which no objection was taken by the petitioner". The answer prayed, in the alternative, "that the value of the services rendered in creating the alleged trust fund be determined and paid out of said fund prior to any payment thereof to the United States".

There was no proof offered before the referee and there is nothing in the record as to what services, if any, the trustee or his attorney performed in creating the fund for the alleged benefit of the United States or what the reasonable value of such services was.

On this petition to review the Government vigorously opposes the trustee's attempt to have the holding of Airline-Arista reconsidered, but it has not withdrawn its original consent to the allowance of a fee up to $200 for the trustee's attorney for services rendered in creating the fund and has not opposed the petition in so far as it seeks to reverse the referee's finding on this single issue.

The referee denied the application for payment of $200 out of the fund despite the Government's consent. It was his view that the United States Attorney lacked authority to consent to such a payment, that no such allowance could be made under § 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, since costs and expenses of administration could be paid only out of the bankrupt estate and not out of trust funds coming into the trustee's hands, and that he had no power to make such an allowance under the circumstances.

In City of New York v. Rassner, supra, on which the holding in the Airline-Arista case was mainly predicated, the Court of Appeals held that the City of New York was entitled to restitution of city sales taxes collected by the debtor in possession in a superseded arrangement proceeding from any funds of the estate in the trustee's hands ahead of expenses of administration, though the taxes collected had not been segregated and were not traceable. This was on the theory that the sales taxes collected, like the federal taxes withheld in the case at bar, constituted a trust in favor of the governmental claimant and such a trust was impressed upon all the assets of the estate for the claimant's benefit. However, at the conclusion of its opinion the court went on to say:

"Other questions are present in this case, but they cannot be decided on this record. The city agrees that the trustee may receive the value of

his services in creating the fund, and we think that a reasonable view. * * * All such matters will be left to the bankruptcy court on remand." (p. 707 of 127 F.2d).

Thereafter the district court in its order on remand provided "that the Referee's and Trustee's statutory commissions, computed on the amount brought into the estate by the setting aside of the chattel mortgage, and the value of the services of the attorney for the trustee in setting aside such chattel mortgage, shall be first paid out of the total funds in the estate, the amount of such payments to be determined by the Referee on motion of any party, and provided further that the balance of the Referee's and Trustee's commissions and the balance of the fee of the trustee's attorney shall be treated as administration expenses, subordinate to the aforesaid claim of the City of New York".

Plainly the Court of Appeals in the Rassner case was of the view that the Bankruptcy Court could determine whether the trustee had performed any services in creating the trust fund to which the City was entitled, and direct payment of the reasonable value of such services out of the fund. This view is consistent with the numerous cases holding that allowances may be made out of funds in the hands of the trustee payable to lienors, or others having special equities, for services by the trustee and his attorney which directly resulted in the preservation or the creation of the funds payable, e. g., Byrer v. Bushong, 108 F.2d 594 (4 Cir. 1940); In re Prindible, 115 F.2d 21 (3 Cir. 1940); In re Centralia Refining Co., 35 F.Supp. 599 (E.D.Ill. 1940); In re Beardsley, 38 F.Supp. 799 (D.Md.1941); 6 Remington on Bankruptcy §§ 2606–2612, 2629 (5th Ed. 1952); 3 Collier on Bankruptcy § 64:02, ftn 10 (14th Ed. 1956), and cases cited in both texts. Cf. Sulmeyer v. Miller Engineering Co., 297 F.2d 856 (9 Cir. 1962). These cases are applicable where a trust is involved since no meaningful distinction can be drawn between liens and trust funds in the context of § 64, sub. a.

While costs and expenses of administration of the bankrupt estate and costs and expenses incurred by the trustee in creating or preserving a specific fund in his hands which is not part of the estate assets may to some extent duplicate one another, there are substantial differences between them. Costs and expenses of general administration, including fees of the attorney for the trustee, though given priority under § 64, sub. a of the Bankruptcy Act, are to be paid only out of the assets of the estate. Under the Airline-Arista and Rassner cases they are not chargeable against a trust fund in the hands of the trustee. Such a fund must be paid to the party entitled thereto in advance of all administration expenses and the priority granted by § 64, sub. a does not apply.

However, if the trustee can show that he incurred costs and expenses, including attorney's fees, which directly resulted in creating or preserving a trust fund which is not part of the assets of the estate and thus conferred a benefit on the party entitled thereto, a different situation arises. Such costs and expenses may under appropriate circumstances be an equitable charge on the fund in the trustee's hands. Such an equitable charge may be recognized and enforced by the bankruptcy court which has the fund under its control.

"[I]t is well settled that bankruptcy proceedings themselves are purely equitable in their character, and, within the limits prescribed by the bankruptcy acts and the special rules of practice prescribed by the Supreme Court, are to be administered in accord with the general principles and practices of equity". Westall v. Avery, 171 F. 626, 628 (4 Cir. 1909); 11 U.S.C.A. § 11, sub. a. See, also, Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

It is true that these equitable powers must be exercised within the limits laid down by the Bankruptcy Act and subject to its specific provisions (In re Concentrated Products Corp., 38 F.2d 745

(3 Cir. 1930)), and the court may not grant equitable relief which overrides a clear congressional mandate as to the manner in which claims should be marshalled or priorities afforded. In re Columbia Ribbon Co., 117 F.2d 999, 1002 (3 Cir. 1941). But this is not to say that the bankruptcy court in the exercise of its equitable powers may not allow a charge which in equity and good conscience should be made against a fund in the hands of one of its officers and under its control. Such an allowance does not override any mandate of Congress expressed in the Bankruptcy Act and has been approved in the cases which have been cited above.

This view of the equities is fortified by practical considerations. If the trustee is to be denied reimbursement of costs and expenses necessarily incurred in creating or preserving funds in his hands, even though payable to others, he may be discouraged from taking steps necessary for their creation or preservation to the substantial loss and damage of the ultimate beneficiaries of the funds. On the other hand, if the trustee does not receive such reimbursement substantial benefits may gratuitously accrue to the beneficiary which it would not otherwise have received or been entitled to.

No doubt the Court of Appeals had both the equitable and practical considerations in mind in the Rassner case when it thought it a reasonable view that the trustee might receive the value of his services in creating the trust fund and left that matter to the bankruptcy court on remand. The same view should prevail in the case at bar.

The record before the referee in the proceeding at bar is far from complete on this question. There is no proof that either the trustee or his attorney performed any services directly resulting in the preservation or creation of the fund payable to the Government, or what the reasonable value of such services are.

Nevertheless, the trustee's right to make such a claim was asserted by the fifth defense in the trustee's answer to the petition. The referee dismissed this defense, among others, on the Government's motion.

In this state of the record the trustee should be permitted, if he so desires, to present to the referee, on notice to the Government, his claims for costs and expenses, including attorney's fees, directly resulting in the creation or preservation of the trust fund. However, in my view such costs and expenses do not include any commissions on the funds or any expenses of the referee's fund and to this extent I disagree with the order of the district court on remand in the Rassner case. A careful differentiation must be made between costs and expenses of general administration as such and the costs and expenses which directly result in the creation or preservation of the funds to which the Government is entitled.

On such application the referee may determine whether costs and expenses of this limited character were in fact incurred and what the reasonable amount of such costs and expenses were. Such a determination lies within his sound discretion and is not governed by the consent of the parties. Should the referee determine that such costs and expenses, including attorney's fees, have been incurred by the trustee and what their reasonable value is, he then may direct payment of the amount thereof out of the funds held in the custody of the Bankruptcy Court as an equitable charge thereon prior to payment to the United States.

The order of the referee in so far as it denies the right of the trustee to present such a claim is reversed and the matter is remanded to the referee for further proceedings not inconsistent with this opinion.

Settle order on notice.