357 F.Supp. 936 (1973)
In the Matter of ACE SALES COMPANY, a corporation, Bankrupt.
No. 69 B 2124(3).
United States District Court, E. D. Missouri, E. D.
April 4, 1973.
*937 Curtis L. Mann, St. Louis, Mo., for Lawrence Sanders, Trustee in Bankruptcy.
Ronald A. McClary and Tyree C. Derrick, St. Louis, Mo., for petitioner Tyree C. Derrick.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This matter is before the court on the petition of Tyree C. Derrick and William L. Weiss to review an order of the referee in bankruptcy entered July 3, 1972. 11 U.S.C. § 67(c).
The factual background, which is undisputed, is as follows: Ace Sales Company ("Ace"), a Missouri corporation engaged in the business of a toy wholesaler, operated from leased premises at 310-312 S. 21st Street, St. Louis, Missouri. On June 16, 1969, an explosion and fire demolished the building and its contents. Weiss was present at the scene of the fire and there he entered into an oral understanding with Vernon Rusert, President of Ace, to represent Ace in all matters relating to the fire loss. On the following day, a meeting was held between Weiss, Rusert, and adjusters for Providence Washington Insurance Company ("Providence"), Ace's insurer. On July 1, 1969, a contract was executed by Rusert as President of Ace employing Weiss and his associate in the practice of law, Derrick, to represent Ace on a thirty per cent contingent fee basis "in [its] claim against [Providence] for entitlement under said policy and for any other damages against [Providence], and also in [its] claims against Laclede Gas Company of the City of St. Louis, Missouri and any other persons, firms or corporations against whom an action may lie. . . ."
Ace's insurance policy with Providence provided coverage for loss of contents by fire in an amount not to exceed $125,000.00, plus $4,000.00 for loss of earnings. The policy contained a reporting endorsement which provided:
"B. Value Reporting Clause: The insured shall report in writing to the Company, not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as to the last day of each calendar month. At the time of any loss, if the insured has failed to file with the Company reports of values as above required, this policy, subject otherwise to all *938 its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable. If the inception date of this policy is the last day of the calendar month, then the first report of values due shall show the total actual cash values as of that date."
The last monthly report furnished by Ace prior to the fire was dated April 29, 1969 and the reported valuation of the insured property was $117,606.24.
On November 10, 1969, petitioners filed a suit in the Circuit Court of the City of St. Louis on behalf of Ace against Providence on the insurance policy, praying for judgment of $300,000 and damages for vexatious delay and attorney's fees.
Upon an involuntary petition, filed November 12, 1969, Ace was declared a bankrupt on December 2, 1969. Subsequently, on September 15, 1970, the Bankruptcy Court authorized a compromise settlement between Providence and the trustee for Ace in the amount of $126,500.00.
The referee's certificate on petition for review, 11 U.S.C. § 67(a)(8), accurately states what the record reveals transpired next:

"On June 7, 1971, Tyree C. Derrick filed a Petition in the Bankruptcy Court for an Order Declaring an Attorney's Lien, and an Order for Payment of Attorney's Fee Pursuant to said Lien. . . .[1]On July 12th, 1971 the Petition was Amended to include William L. Weiss as a co-petitioner. On July 23rd, 1971 and on August 11, 1971 hearings were held on this issue and a transcript of testimony was prepared. Memoranda of Law were filed by the petitioners and the trustee, and on January 5th, 1972 the matter was taken as submitted upon the filing of a Reply Memorandum by petitioners. On July 3, 1972, the Bankruptcy Court filed its Order that the trustee pay to petitioners the sum of $2,500.00 in satisfaction and discharge of their lien rights, plus interest on said sum to July 3, 1972 in accordance with the terms of a Stipulation previously approved by the Court on March 24, 1971. Petitioner, Tyree C. Derrick, was further ordered to endorse a Certificate of Deposit for $37,950.00, in the joint names of the Trustee and Tyree C. Derrick, on deposit at Mark Twain South County Bank, in order that the Trustee might have same reissued in his own name as Trustee in Bankruptcy."

The referee's order was based on his conclusion that a fiduciary relationship existed between Weiss and Ace at the time of execution of the thirty per cent contingent fee contract and that the contract was unfair, unreasonable and constituted overreaching by petitioners in the circumstances.
The alleged errors set out in the petition for review may be summarized as follows:
A. the referee should have validated the lien in the amount of the contract;
B. the conclusion that the contingent fee contract was unfair, unreasonable and constituted overreaching is incorrect because there is no evidence to support it and because the referee considered facts known only subsequent to the execution of the contract;
C. the conclusion that a fiduciary relationship existed between Weiss and Ace at the time of execution of the contract *939 is not supported by the evidence and is based on improperly admitted evidence;
D. the referee erred in applying equitable principles to invalidate an essentially legal contract sanctioned by state law where there was no evidence of fraud, accident or mistake; and
E. the referee failed to apply Missouri law on the issue of the attorney's lien.
A referee's findings of fact are accepted unless clearly erroneous. Shainman v. Shear's of Affton, Inc., 387 F.2d 33, 37 (8th Cir. 1967). The legal significance to be given the facts is a question of law. Solomon v. Northwestern State Bank, 327 F.2d 720, 724 (8th Cir. 1964).

A.
The petition contains the allegation that the referee should have validated the lien in the amount of the contract. In their brief, however, petitioners do not elaborate on that allegation but argue that:
"[t]hey did not contemplate and neither could they be expected to combat any extraneous issues such as fiduciary relationship, unconscionability and overreaching where it was never properly made an issue by the Trustee."
In 2 Collier on Bankruptcy ¶ 39.22, at 1506 (14th ed.), the general rule regarding the necessary allegations in the petition is stated as follows:
"According to § 39c, such a petition must `set forth the order complained of and the alleged errors in respect thereto'; and the judge may either decline to pass upon points not specifically designated or he may simply dismiss the petition."
(Emphasis supplied); (footnotes omitted).
Petitioners' contention appears to be an afterthought. The record of the hearing in bankruptcy clearly reveals that evidence concerning the fiduciary relationship between Weiss and Ace and the reasonableness of the contingent fee contract was freely received and subjected to extensive cross-examination. Although these issues were not raised in the pleadings in the bankruptcy court, they must be deemed to have been tried by the implied consent of the parties. See Fed.R.Civ.P. 15(b); General Orders in Bankruptcy 37.[2]

B.
The referee summarized his findings and conclusion that the contingent fee contract was unfair, unreasonable and constituted overreaching as follows:
"Looking then to the contract `from the circumstances of the parties at the time of its execution', this Court concludes that the attorneys were aware, or should have been aware, from a reading of the provisions of the insurance policy, from the information available at the accountant's office, used in preparing the June 24th reports, and from discussions with representatives of the insurance company, that there was a certainty of a minimum recovery under the policy of $117,606.24, *940 which would result in a fee of $35,281.87 on their 30% contingent fee contract. There is no indication in the record that the certainty of recovery was explained to Rusert prior to or at the time of the execution of the fee contract."
The findings are fully supported by the record and the conclusion that the contract was unfair, unreasonable and constituted overreaching, was, on the facts, correct.
Petitioners also contend that the referee improperly considered facts known only subsequent to the execution of the contract. In support of this contention, petitioners point to a statement in the referee's memorandum opinion that the records in the accountant's office were used by the insurance adjusters to satisfy themselves as to the amount of loss. It is apparent from his memorandum opinion, however, that the referee considered the records which were available prior to the execution of the contract, and not their subsequent use, in reaching his conclusion.

C.
Petitioners contend that the conclusion that a fiduciary relationship existed between Weiss and Ace is not supported by the record. Rusert, president of Ace testified:
Q. "What type of work did Mr. Weiss do as the attorney for Ace Sales Company?
A. "Well, he did whatever was necessary. He was at every stockholders meeting, and any problems we had, like checking accounts, and just anything that needed to be done, like letters written
Q. "Do you know for how long he had acted as attorney for Ace Sales Company, prior to the fire, I mean?
A. "Ever since '62 and maybe before. I think he handled it even before I had the business."
Weiss himself testified:
Q. "And have you continued to act as attorney for Ace Sales Company since 1949?
A. "I have.
Q. "Has it been continuously since 1949?
A. "It has been continuous through different owners and operations.
Q. "And what was the nature of your work as attorney for the Ace Sales Company in general?
A. "Very general need of any type of legal action."
The referee's finding that Weiss had acted as general corporate attorney for Ace since 1949 is not clearly erroneous. The conclusion that a fiduciary relationship existed between Weiss and Ace at the time of execution of the contract was well supported by the record.
Petitioners also contend that certain evidence was improperly admitted over objection. The referee found that Rusert relied on Weiss as corporate counsel to advise him regarding the fire loss. The referee stated in his memorandum opinion:
"The extent of his reliance is evidenced from the fact that he likewise retained Weiss on a written 30% or 33 1/3 per cent contingent fee contract to represent him in connection with the adjustment of the loss of the building, leased by Ace from Weco (a partnership consisting of Rusert, a Mr. Baum and a Mr. Douglas). . . ."
Petitioners argue that the evidence referred to "had nothing whatsoever to do with any attorney's contracts or fees in connection with a fire loss sustained by a completely different entity than Ace Sales Company," and therefore "undoubtedly raised some improper inferences prejudicial to the petitioners. . ." There was sufficient other evidence for the referee's conclusion that a fiduciary relationship existed between Weiss and Ace. If there was error, it was harmless.

*941 D.
Petitioners rely on Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935), to support their contention that the referee erred in applying equitable principles to invalidate an essentially legal contract sanctioned by state law. The holding of Manufacturers' Finance is that a federal court sitting in equity may not ignore or modify a contract that is free of mistake or fraud and valid by state law merely because the contract seems hard and oppressive. The contention is without merit because the referee correctly concluded that under the law of Missouri, the contingent fee contract at issue here was invalid. See Fein v. Schwartz, 404 S.W.2d 210 (Mo.App.1966); Morton v. Forsee, 249 Mo. 409, 155 S.W. 765 (Mo. 1913).

E.
Petitioners' final contention is that the referee failed to apply Missouri law on the issue of the attorney's lien. The argument in the brief on this point is merely a rehash of their contention that the referee considered facts known subsequent to the execution of the contract. This point is disposed of in part B, supra.
Petitioners sought to recover on the contingent fee contract upon which the lien was based. Since the lien and the contract were declared invalid, petitioners were allowed a reasonable fee on a quantum meruit basis. Under those circumstances, petitioners may have been able to make a stronger case for the reasonable value of their services. At the hearing on the petition for review, however, petitioners represented to the court that they had no additional evidence to offer on the point. Therefore, taking the evidence on the reasonable value of their services as complete, the court concludes that the referee's finding that the reasonable value of their services was $2,500.00 is not clearly erroneous.
The order of the referee is confirmed.
So ordered.
NOTES
[1] "Previous efforts to have this issue determined in the District Court culminated in an order of the United States Court of Appeals, 8th Circuit, on May 17, 1971, that the statutory right to first determine the lien rights of an attorney was vested in the Referee in Bankruptcy. (442 F.2d 1317)."
[2] Petitioners stated in their reply memorandum in the bankruptcy court that "the question here to be determined is whether or not there was a valid contingent fee contract, reasonable at the time it was entered into. . . ." (Emphasis supplied). In the same memorandum, petitioners addressed themselves to the question of whether the evidence showed overreaching on their part. Petitioners also moved this court to allow the presentation of additional evidence on the question of whether a fiduciary relationship existed between Weiss and Ace. In the Order denying the motion, this court said:

"No claim is made that the evidence is newly discovered or that petitioners did not have a fair and full opportunity to elicit the desired testimony at the precious hearing." Order, September 5, 1972 (Emphasis supplied).