**In re Gilbert ALCALA, Darlene Alcala, Debtors.**

**Richard A. CANATELLA, Plaintiff–Appellant,**

**v.**

**Edward F. TOWERS, Trustee, Defendant–Appellee.**

**No. 89–15372.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 20, 1990.

Decided Nov. 1, 1990.

Richard A. Canatella, San Francisco, Cal., for debtors, plaintiff-appellant.

Michael St. James, Rosenblum, Parish & Bacigalupi, San Francisco, Cal., for defendant-appellee.

Before LIVELY,* FLETCHER and REINHARDT, Circuit Judges.

* The Honorable Pierce Lively, Senior Circuit Judge of the Sixth Circuit, sitting by designation.

LIVELY, Circuit Judge:

This case concerns an attempt by an attorney for Chapter 7 debtors in bankruptcy, who was never employed by the trustee, to collect a fee for alleged post-petition services to the bankruptcy estate. The bankruptcy court denied the request for an attorney fee, and the district court affirmed. We agree that the attorney is not entitled to be paid from estate assets, and affirm the judgment of the district court.

## I.

Attorney Richard A. Canatella prepared and filed a petition in bankruptcy on behalf of Gilbert Alcala and Darlene Alcala (the debtors) on September 19, 1983. The "Schedules of Assets and Liabilities" filed with the petition listed personal property, consisting of household goods, supplies, and furnishings, wearing apparel, jewelry, etc. with a total value of $7,500. The schedules listed no contingent or unliquidated claims. The debtors' "Statement of Affairs" listed two lawsuits to which the debtors were parties at the time they filed the petition in bankruptcy. One listing disclosed that Gilbert Alcala was a defendant in a state court action that apparently had no connection with the present case. The other listed case was pending in the Bankruptcy Division of the U.S. District Court for the Northern District of California, and was described as "Frink, et al. v. Walsh, et al." with no indication of what the debtors' involvement was in the case.

After Edward F. Towers had been appointed trustee in bankruptcy of the debtors, Canatella made two motions on behalf of the debtors requesting the trustee to abandon certain property of the estate. These motions, dated November 2 and December 19, 1983, requested the abandonment of the debtors' cross-claims and third-party claims against various parties in the adversary action pending in bankruptcy court as *Frink v. Walsh*. The motions for abandonment described the debtors' claims as seeking to enforce a written contract for the payment of money and for the cancellation of certain deeds of trust. The mo-

tions, signed by Canatella, described the claims as "inconsequential, or nonexistent" and stated that they should be abandoned so the debtors could proceed to prosecute them. Neither the motions nor pleadings in *Frink v. Walsh* that were attached as exhibits referred to a claim against Bank of America NT & SA (the Bank). The pleadings contained claims by the debtors only against Robert Frink and various Frink entities.

The trustee consented to the abandonment of the *Frink v. Walsh* claims and the bankruptcy court entered an order approving abandonment on February 10, 1984. The order stated that it appeared the claims had "no value to the estate, or at best only inconsequential value to the estate."

Meanwhile, on January 20, 1984, and unbeknownst to the trustee, Canatella filed a complaint on behalf of the debtors in a California state court against Robert Frink, the Frink entities and others. The claims were similar to those the debtors had asserted in their pleadings in the adversary proceedings. Again, the Bank was not a party and no allegations were made that would state a claim against the Bank.

On May 23, 1984, the debtors, through Canatella, filed an amended complaint in the state court action against Frink. The amended complaint sought damages from the Bank for breach of contract, breach of covenant of good faith and fair dealing, fraud and interference with a business relationship. The claims against the Bank, as alleged, arose before the debtors filed their original petition in bankruptcy. Subsequently, the debtors filed a second amended complaint expanding their claims.

Just prior to filing the first amended complaint Canatella and the debtors entered into a "Legal Service Contract" by which the debtors retained Canatella to represent them "in the matter involving Gilbert Alcala v. Bank of America, et al." The contract established an agreed rate of compensation for legal services with a 35 percent contingency provision and granted

Canatella a lien on the debtors' claims against the Bank and any cause of action filed thereon.

## II.

### A.

Canatella did not inform the trustee of the claims against the Bank at the time he filed the first or second amended complaint. Upon learning of the claims, the trustee employed special counsel pursuant to section 327 of the Bankruptcy Code, 11 U.S.C. § 327 (1982), to pursue the claims as assets of the estate. After negotiations the Bank agreed to pay $33,000 in settlement of all the claims. The trustee presented the settlement proposal to the bankruptcy court. The debtors, represented by Canatella, objected to the proposed settlement. In addition to their objections to the settlement, the debtors filed a motion to confirm the claims against the Bank as abandoned property of the estate.

The bankruptcy court filed findings of fact and conclusions of law finding the settlement "fair and reasonable," and entered two orders—one approved the compromise settlement and the other denied the motion to declare the claims against the Bank abandoned property. The court found that the causes of action asserted against the Bank in the two amended complaints were the property of the estate and had not been abandoned by the estate.

The debtors appealed both orders and the district court affirmed. The debtors then appealed to this court, which affirmed the district court in an unpublished memorandum decision. Noting that the claims against the Bank were based on events that allegedly occurred prior to the filing of the petition in bankruptcy, this court stated: "Therefore, the causes of action accrued pre-petition and are part of the estate vested in the trustee." *In re Gilbert and Darlene Alcala*, 845 F.2d 1029 (9th Cir.1988).

### B.

Canatella opened the next chapter in this litigation by filing a pleading styled "Mo-

tion for Order Enforcing Lien on Proceeds of Court Approved Settlement of Bank of America Litigation and Directing Trustee to Pay Debtors' Attorney Amounts Determined." Canatella also filed a declaration containing a copy of his contract with the debtors and a 45–page exhibit detailing time spent and expenses incurred purportedly in pursuit of the claims against the Bank, with a statement due for services in the amount of $68,242.84. After a hearing the bankruptcy court denied the motion for order enforcing lien, noting that "Mr. Canatela [sic] was never retained by the estate but, rather, represented the debtors and not the Trustee, and that Mr. Canatela represented interests adverse to the estate."

Canatella appealed to the district court, which affirmed denial of the motion on several grounds. The court found the motion procedurally defective as an application for compensation because notice was not given to creditors as required by Bankruptcy Rule 2002, and defective as an attempt to enforce a lien because it was not brought as an adversary proceeding under Part VII of the Bankruptcy Rules. The district court also found the motion substantively defective under Bankruptcy Code section 329 because Canatella represented interests adverse to the trustee and the estate.

## III.

Canatella's arguments on appeal are confusing and appear, in part at least, to be based on false assumptions about the record. He appears to claim that the trustee approved abandonment of the claims against the Bank along with the Frink claims. The record totally refutes this contention. The order approving abandonment of the Frink claims was entered before the Bank was made a party to the *Frink* action and before the trustee knew of the existence of any claims against the Bank.

Canatella also appears to contend that the claims against the Bank somehow were not part of the bankruptcy estate, relating

this assertion to the fact that he was claiming an attorney fee on the basis of a post-petition contract with the debtors. This position either overlooks or refuses to recognize the holding of this court in his first appeal: "The events from which their [the debtors'] damages arose, certain alleged breaches of contract and fraud, occurred before their Chapter 7 petition was filed. Therefore, the causes of action accrued pre-petition and are part of the estate vested in the trustee." *In re Gilbert and Darlene Alcala*, supra, at 2 [845 F.2d 1029 (table)].

■ Canatella also argues that the district court's findings of procedural defects are erroneous as a matter of law because he is not seeking compensation under sections 327–330 of the Bankruptcy Code as an attorney appointed by the trustee. Rather, he asserts, he has a lien under California law that is enforceable from the proceeds of the lawsuit against the Bank even though they have become estate assets. He cites authority to the effect that bankruptcy courts will enforce a lien based on a fee agreement between debtors and their attorney and allow compensation based on the reasonable value of the attorney's services to the estate. See *In re Pacific Far East Line, Inc.*, 654 F.2d 664, 669 (9th Cir.1981).

*Pacific Far East Line* involved proceedings under Chapter XI of the Bankruptcy Act of 1898. The dispute between an attorney for the debtor and a creditors' committee was over the priority to be accorded a claim for an attorney fee under a contingent fee agreement. The creditors argued that 95 percent of the fee for services performed before the Chapter XI "arrangement" should be treated as an unsecured claim. The district court held, however, that the attorney had a lien on funds generated by a settlement of claims of the debtor against third parties, and that the fee was payable directly from the settlement fund. *Id.* at 666–67.

Critical factual differences make *Pacific Far East Line* totally inapplicable to the present case. In that case the contingent fee contract was made prior to the commencement of bankruptcy proceedings, and most of the services were rendered prior to that time. The attorney pursued a claim on behalf of the debtor for more than three years before the debtor filed its Chapter XI petition. One month after the filing, while a lower court's decision in favor of the debtor was on appeal, the third parties offered a settlement that would result in the bankruptcy estate receiving $10 million in damages and other valuable concessions. The bankruptcy court appointed the debtor's attorney special counsel to conclude the settlement. After the estate received the settlement funds, the bankruptcy court found that the contingent fee agreement of 15 percent represented reasonable compensation and awarded the attorney $1.5 million payable immediately from the settlement funds. *Id.* at 667.

Affirming the award, this court found that the attorney had a valid lien that was enforceable against the settlement proceeds. "Under California law, the lien takes effect from the date it was created; upon the fund's production, the lien attaches to the specific asset." *Id.* at 669. Since the lien was created more than three years before Chapter XI proceedings were begun, it had priority from that earlier time rather than from the date of the payment of the settlement, as contended by the creditors. *Id.* at 669–70. In other words, the claims that produced the fund already were encumbered with the attorney's lien when they became estate property in the Chapter XI proceeding. When the claims ripened into a monetary settlement, the lien attached to this asset of the estate.

The present case is distinguishable in many respects. Although based on later-filed pleadings, the claims against the Bank arose before the commencement of Chapter 7 proceedings. The debtors and Canatella did not reveal these claims in the bankruptcy petition or schedules. Canatella was never appointed an attorney for the estate, either before or after the trustee discovered the existence of the claims and began pursuing them. At the debtors' and Canatella's instigation, the trustee abandoned the claims against the Frink entities. At

that time, there was no indication that the debtors were asserting claims against the Bank. Furthermore, the debtors and Canatella did not enter into the fee agreement until after the order approving abandonment of the claims in the *Frink* action was entered. Only then did Canatella file the first amended complaint on behalf of the debtors, asserting claims against the Bank for the first time. Thus, the claims against the Bank that ultimately ripened into a settlement did not come to the estate encumbered with an attorney's lien. The lien could not have attached until the fee contract was made. This occurred months after the Chapter 7 petition was filed and after the claims had become estate assets. Canatella and the debtors could not create a lien on estate property by their fee agreement.

█ Finally, Canatella argues that his representation of the debtors with regard to the claims against the Bank benefited the estate. It is clear, however, that Canatella's efforts to collect from the Bank were made on behalf of the debtors, not for the benefit of the estate. He consistently took the position that the trustee had abandoned the claims against the Bank and filed a motion long after the Frink claims had been abandoned seeking to have the court confirm that the claims against the Bank had been included in the earlier order of abandonment. The bankruptcy court denied that motion, and when the district court affirmed, he appealed to this court. Only after this court conclusively determined that the claims against the Bank were property of the estate that had not been abandoned to the debtors did Canatella seek to enforce an attorney's lien on the proceeds of the settlement.

## IV.

█ This court reviews the findings of fact of a bankruptcy court under the clearly erroneous standard and considers questions of law de novo. Bankruptcy Rule 8013; *In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987).

### A.

The bankruptcy court's findings of fact are not clearly erroneous. The estate did not abandon the claims against the Bank; they remained assets of the estate. This question was settled upon the first appeal to this court. Further, the record fully supports the finding that Canatella represented the debtors, not the estate, in his efforts against the Bank. At all times he contended that the Bank claims had been abandoned. When special counsel for the estate reached an agreement with the Bank to settle the claims, Canatella filed objections on behalf of the debtors. The findings that Canatella consistently took positions adverse to the trustee and that his efforts conferred no benefit on the estate are supported by the record.

### B.

The rulings of the bankruptcy court and the district court are correct as a matter of law. The post-petition contingent fee agreement did not create a lien on the proceeds of the settlement. Putting aside the procedural deficiencies of Canatella's efforts to collect from the estate, the fee claim does not satisfy the basic criterion for any allowance of compensation to an attorney from the funds of an estate in bankruptcy. Section 330 of the Bankruptcy Code limits such payments to "reasonable compensation for actual, necessary services rendered by such ... attorney." While an attorney for a debtor may be allowed compensation to the extent that his or her services benefit the estate, section 330 limits such compensation to reasonable charges for actual and necessary services, rendered "in contemplation of and in connection with" the bankruptcy case. *In re Yermakov*, 718 F.2d 1465, 1472 (9th Cir. 1983). The findings of fact that we have affirmed demonstrate that Canatella's services were neither actually for the benefit of the estate nor necessary for its proper administration. We agree with the court's statement in *In re Reed*, 890 F.2d 104, 106 (8th Cir.1989):

[A]n attorney fee application in bankruptcy will be denied to the extent the

104

services rendered were for the benefit of the debtor and did not benefit the estate.

Canatella rendered his services for the benefit of the debtors, and took positions throughout all the proceedings that were adverse to the interests of the estate rather than for its benefit. These services were not compensable under section 330 of the Bankruptcy Code.

The judgment of the district court is AFFIRMED.